1  William J. Denius (*Pro Hac Vice*)
   **Killgore, Pearlman, Semanie, Denius & Squires, P.A.**
2  2 South Orange Avenue, 5th Floor
3  Orlando, Florida 32801
   Telephone:  (407) 425-1020
4  Facsimile:  (407) 839-3635
   Email:  wjdenius@kpsds.com
5

6  Goli Mahdavi (SBN 245705)
   **BRYAN CAVE LEIGHTON PAISNER LLP**
7  Three Embarcadero Center, 7th Floor
   San Francisco, CA  94111
8  Telephone:  (415) 675-3400
   Facsimile:  (415) 675-3434
9  E-Mail:  goli.mahdavi@bclplaw.com

10 Attorneys for Defendant
   CREDITO REAL USA FINANCE, LLC
11

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| CRYSTAL TOLENTINO<br><br>          Plaintiff,<br><br>v.<br><br>CREDITO REAL USA FINANCE, LLC,<br><br>          Defendant. | Case No:  2:19-cv-00335-MCE-AC<br><br>Hon. Morrison C. England, Jr.<br><br>**MOTION TO COMPEL ARBITRATION: MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  June 13, 2019<br>Time:  2:00 p.m.<br>Room:  Courtroom 7<br><br>Complaint Filed: February 26, 2019 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Crystal Tolentino ("Plaintiff") entered into a binding Arbitration Agreement in her Retail Installment Sale Contract with Defendant in which she agreed to individual arbitration of her claims. Notwithstanding Plaintiff's express, written Arbitration Agreement, Plaintiff filed the instant lawsuit in this Court alleging claims for violations of the Telephone Consumer Protection Act ("TCPA") in Count I and violations of the Rosenthal Fair Debt Collection Practices Act in Count II. Because the Arbitration Agreement clearly delegates the issue of arbitrability to the arbitrator, the arbitration provision must be enforced; and a court may not decide the arbitrability issue. The scope of the Arbitration Agreement otherwise encompasses Plaintiff's claims. This cause must accordingly be arbitrated.

## FACTUAL BACKGROUND

Defendant is an automotive finance company which provides financing for vehicle purchases throughout the United States, including California. (Declaration of Mike Thacker ("Thacker Dec."), ¶ 3). On or about April 14, 2016, Plaintiff entered into a Retail Installment Sale Contract (the "Contract") for the purchase of a 2012 Nissan Versa ("Vehicle"). (Thacker Dec., ¶ 5, Ex. 1). The Contract contains an assignment provision pursuant to which the Seller (Future Nissan) assigned its interest in the Contract to Defendant. (Thacker Dec., ¶ 6, Ex. 1). Plaintiff agreed to individual arbitration pursuant to the following Agreement to Arbitrate ("Arbitration Agreement") on the face of the Contract:

> **Agreement to Arbitrate**: By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Plaintiff signature appears below the aforementioned Agreement to Arbitrate. The Arbitration Agreement continues:

> **ARBITRATION PROVISION**
> **PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS**
> **1.   EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL**…
>
> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract), shall at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(Thacker Dec., Ex. 1). The Arbitration Agreement provides that arbitration under the Arbitration Agreement shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 *et. seq.*) and not by any state law concerning arbitration. (Thacker Dec., Ex. 1).

Despite Plaintiff's express, written Arbitration Agreement, Plaintiff filed the instant lawsuit in this Court alleging claims for violations of the TCPA in Count I and violations of the Rosenthal Fair Debt Collection Practices Act in Count II. In essence, Plaintiff alleges that she is a person allegedly obligated to pay a debt asserted to be owed to Defendant, and that Plaintiff's alleged obligation arises from a transaction in which property, services or money was acquired on credit primarily for personal, family or household purposes and is a "consumer debt"; and that Defendant placed multiple calls to Plaintiff in an attempt to collect a debt using an automatic telephone dialing system and without Plaintiff's consent (ECF No. 2, ¶¶ 8, 9, 11, 12, 13).

Because the Arbitration Agreement clearly delegates the issue of arbitrability to the arbitrator, the arbitration provision must be enforced; and a court may not decide the arbitrability issue. The scope of the Arbitration Agreement otherwise encompasses Plaintiff's claims.

**ARGUMENT**

    **A.  The FAA Governs**

The Arbitration Agreement provides that arbitration under the Arbitration Agreement shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 *et. seq.*) and not by any state law concerning arbitration. (Thacker Dec., Ex. 1). The Federal Arbitration Act ("FAA") accordingly governs. 9 U.S.C. § 2.[1]

The FAA sets forth a liberal federal policy favoring arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 179 L. Ed. 2d (2011); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (the Federal Arbitration Act "established a federal policy in favor of arbitration. . . ."). The FAA was intended to "overcome an anachronistic judicial hostility to agreements to arbitrate, which American courts had borrowed from English common law," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 n.14, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985), that resulted in "courts' refusals to enforce agreements to arbitrate," *Allied-Bruce Terminix Cos. V. Dobson*, 513 U.S. 265, 270, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995). *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052 (9th Cir. 2013). The FAA language which makes covered arbitration agreements "valid, irrevocable and enforceable" underscores this strong public policy. 9 U.S.C. § 2.

### B. A Valid Arbitration Agreement Exists

---

[1] It is further notable that the FAA applies to arbitration agreements affecting interstate commerce; and the consumer financing transaction that is the subject of the Contract affects interstate commerce. The delivery, transfer, or movement of goods, services, or other articles of commerce "has long been recognized as a form of 'commerce.'" See *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Maine*, 520 U.S. 564, 573 (1997). Indeed the United States Supreme Court has stated that "[t]he sale of an automobile does purposefully inject the vehicle into the stream of interstate commerce so that it can travel to distant States." *World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 306 (1980). Moreover, "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'" *Citizens Bank*, 539 U.S. at 56-57, citing *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219, 236 (1948). In the aggregate, the economic activity of providing consumer financing in connection with the purchase and sale of motor vehicles represents a general practice which is not only subject to federal control, but in fact heavily regulated at the federal level.

As the United States Supreme Court recently held, "[t]o be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 202 L.Ed.2d 480 (U.S. 2019), citing 9 U.S.C. § 2. In this case, a valid arbitration agreement exists. On or about April 14, 2016, Plaintiff entered into a Retail Installment Sale Contract (the "Contract") for the purchase of a 2012 Nissan Versa ("Vehicle"). (Thacker Dec., ¶ 5, Ex. 1). The Contract contains an assignment provision pursuant to which the Seller (Future Nissan) assigned its interest in the Contract to Defendant. (Thacker Dec., ¶ 6, Ex. 1). Pursuant to the Agreement to Arbitrate ("Arbitration Agreement") in the Contract, Plaintiff agreed to individual arbitration pursuant to the following arbitration provision:

**ARBITRATION PROVISION**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract), shall at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(Thacker Dec., Ex. 1). Thus a valid arbitration agreement exists.

## C. Because the Contract Clearly Delegates the Issue of Arbitrability to the Arbitrator, the Arbitration Provision Must be Enforced.

Parties to an arbitration agreement "can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Fridman v. Uber Techs., Inc.*, 2019 U.S. Dist. LEXIS 52093, 2019 WL 1385887, citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69, 230 S. Ct. 2772, 177 L.Ed.2d 403 (2010). However, "unlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitrability is 'an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise.*"

*Fridman*, citing *Oracle Am., Inc. v. Myriad Grp. A.G.,* 724 F.3d 1069, 1072 (9th Cir. 2013), quoting *Howsam v. Dean Witter Reynolds*, Inc., 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) (emphasis in original).

Here, the parties have clearly and unmistakably provided that the issue of arbitrability is for the arbitrator; and not for the Court. More specifically, the Arbitration Agreement expressly provides that "the interpretation and scope of this Arbitration Provision, *and the arbitrability of the claim or dispute…shall…be resolved by neutral binding arbitration and not by a court action."* (emphasis added). This language evidences the parties' clear and unmistakable intent to delegate the threshold questions of arbitrability to an arbitrator. *Crooks v. Wells Fargo Bank, N.A.,* 312 F. Supp. 3d 932 (S.D. Cal. 2018) (holding that language in arbitration provision identical to language in the Arbitration Agreement in this case evidences the parties' clear and unmistakable intent to delegate the threshold questions of arbitrability to an arbitrator).

Because the Arbitration Agreement clearly delegates the issue of arbitrability to the arbitrator, the arbitration provision must be enforced. *Johnson v. Oracle Am., Inc.*, 2019 U.S. App. LEXIS 8334, 2019 WL 1349757 (9th Cir. 2019), citing *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016); see also *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 202 L. Ed. 2d 480 (U.S. 2019) (if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue).[2]

---

[2] Even if the Arbitration Agreement did not delegate the issue of arbitrability and scope to the arbitrator, which it does; the scope of the Arbitration Agreement otherwise encompasses Plaintiff's claims. Plaintiff's claims arise out of and relate to Defendant's alleged attempt to enforce its rights under the Contract to collect the consumer debt evidenced by that very Contract. See generally Doc. 2. These claims fall squarely within the broad scope of the Arbitration Agreement. Indeed there is no question that a claim based on actions allegedly taken by Defendant in collecting the subject debt "arises out of or relates to" Plaintiff's Contract. See *Tookenay v. Santander Consumer USA, Inc.*, 2012 WL 3245343 at *2 (S.D. Fla. Aug. 9, 2012) (finding that there was "no question" that actions allegedly taken by the defendant in collecting plaintiff's debt "arise out of or relate to" the plaintiff's "purchase of the vehicle and the parties' Contract and relationship" so as to be covered by arbitration clause in retail installment contract). Therefore, Plaintiff cannot show "with positive assurance that the arbitration clause is not susceptible of an

### D. Plaintiff's Complaint Should Be Dismissed

Section 3 of the Federal Arbitration Act gives a court authority, upon application by one of the parties, to grant a stay pending compliance with the contractual arbitration clause...[t]he provision [does not, however] limit the court's authority to grant a dismissal. *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988). Because the Arbitration Agreement encompasses the instant matter, this action should accordingly be dismissed.[3]

### CONCLUSION

For the foregoing reasons, this Court should grant Defendant's Motion to Compel Arbitration; compel arbitration of this matter and Plaintiff's claims on an individual basis; dismiss this action; and grant such other and further relief as this Court deems proper.

Dated: April 29, 2019

**KILLGORE PEARLMAN SEMANIE DENIUS & SQUIRES P.A.**

By: /s/ William J. Denius
William J. Denius
Attorneys for Defendant
CREDITO REAL USA FINANCE, LLC

---

interpretation that covers the asserted dispute." *AT&T Technologies, Inc.*, 475 U.S. at 650, quoting *United Steelworkers of America v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 582-83 (1960).

[3] This matter should alternatively be stayed pending arbitration.